All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Please be seated. So our first case for argument today is 22-1704, Nichia Corporation v. DSS. Mr. Lucas, please proceed. Good morning, Your Honors, and may it please the Court. Eric Lucas from Sherman & Shirley on behalf of the appellant Nichia. Nichia appeals from an IPR final written decision in which the board found the challenge claim to the OFBORO patent not unpatentable over the asserted prior argument. In doing so, the board committed multiple legal errors. First, while the board provided at least a partial claim construction for the phrase the mounting surface having a plurality of recesses, finding that the recesses are in the mounting surface itself, it never fulfilled its obligations under Homeland Housewares fully to construe the related offsets claim phrase that requires the offsets to be between the mounting surface and the conforming electrical contacts. Notwithstanding the board's refusal to fully construe the offsets phrase, it found the claims not unpatentable precisely because it could not find the offsets in the prior art. Second, to the extent that the board implicitly used the ordinary meaning of spaces for the word offsets, the combination of that construction and the construction for mounting surface having a plurality of recesses cannot be correct because the interplay of those two terms presents an impossibility and because the constructions taken together contravene the intrinsic evidence, including the patent figures and the prosecution history. Counsel, can I ask you, these issues that you're raising, what's the standard of review that we as an appellate court would apply? De novo, Your Honor. For the claim construction issue, de novo review? Yes, Your Honor. Regarding the question of impossibility, it was not proper for the board to have simply shrugged off such concerns by suggesting that there might be possible constructions of other claim terms, not propounded by either party, that might rectify the impossibility inherent in its constructions of requiring that the electrical contacts both conform to and be spaced apart from the mounting surfaces recesses. Well, one of the problems I have with your argument is you seem to demand that the board construe more than it thought necessary to resolve your case. And we've repeatedly stated that it's appropriate for a lower tribunal to constrain itself to only what it needs to decide in order to resolve a case. So what's wrong with that? Why do you think in this instance the board should have had to go further and resolve more than it thought necessary? Your Honor, I think that the issue stems from the interrelationship between the mounting surface claim term and the offsets claim term. And therefore, to just construe the mounting surface claim term and then not be able to find the offsets claim term that's wrapped up in that mounting surface claim term is a failure under the board's duty under Homeland Health Service to resolve that. I thought that the board said the mounting surface has to have a plurality of recesses. And the petition, that means something that has, when they say recesses, it has to have some sort of shape that's non-planar. But then what happened was the mounting surface that was identified in the petition by the petitioner actually was a straight line. So they said the mounting surface does not have a plurality of recesses in the prior. Why did they have to do more than that? That's right, Your Honor. That was the argument in the petition. During the deposition of DSS's expert, Dr. Baker, he identified a mounting surface that followed the contours of the recesses, as you were describing. And in Michia's reply during the IPR, it explained how that construction was not meaningfully different with respect to measuring the offsets between a planar projection of that mounting surface and the underside of the electrical contacts. Are you talking now about your alternative argument? That's right, Your Honor, yes. Okay, so what is this, what priority are you focusing on there with that? The Kim reference would be the first reference that we put forward. But we made that argument in the reply briefing with respect to all of the prior references. Okay, so this is your alternative argument, where you say that Kim has a mounting surface that is nonplanar and therefore meets the board's. But I thought that the board said that Kim didn't teach that. In other words, that Kim didn't have a mounting surface that had a plurality of recesses. What the board said on Appendix 18, Your Honor, is that under the alternative argument, Kim lacked the offsets that were measured between the underside of the electrical contacts and the mounting surface. I'm looking at page 18 on the record. Could you tell me which sentence you're focusing on? Okay. The sentence that begins in the first paragraph, contrary to the claim's requirement that the device itself comprise a mounting surface with recesses and electrical contacts that are sized to provide, and then it's italicized, offsets between said mounting surface and said electrical contacts, both Kim's device and the Figure 4a embodiment show recesses between the device and the flat surface on which the device is mounted. Well, maybe it's the flat surface on which the device is mounted is the thing that they were referring to as the mounting surface. How am I supposed to know that they didn't also rely on the fact that Kim doesn't have a mounting surface or doesn't show a mounting surface that's nonplanar? Well, I think that the analysis for each of the prior references is in two parts in the Board's Found Written Decision. The first part begins on 17 where it discusses the planar mounting surface with respect to NYCHA's construction that it put forth in the petition, and then Part 2 of the analysis is under the alternative argument where the recesses are in the mounting surface itself under DSS's expert construction. One of the problems I'm having with your alternative argument is when I look at Kim and what it teaches, I feel like you just drew in a line that was nonplanar and that Kim doesn't actually say that that line being true is the mounting surface. And I think the Board may have felt the same way based on the sentence that it has at the top of page 18. So could you tell us where in Kim you think it discloses a mounting surface the way you've drawn it in in your briefs? Yes, Your Honor. So the purported inventive concept, if you will, of the 040 patent is that there are recesses that provide room for solder to affix the electronic device to a printed strip. Sometimes it's helpful in these arguments to point to us where in the appendix we should look to for the teaching of a line art so we can follow the record as you're telling us what your answer is. I think this might be one of those circumstances where that would be helpful. If you still have the final written decision open, you can look at Appendix 16 where two of the figures from the Kim prior art reference are reproduced. And the Figure 3 Kim reference, while the red line is shown in that annotation as being Nitsche's initially proposed construction, you can see where the zigzag electrical contacts, which are designated as 32 and 31 in that figure, you can see how there's solder underneath of those two electrical contacts. Does the description describe solder as being underneath those two? I believe it's either solder or some other type of adhesive that affixes this electronic device to a printed circuit board or some other type of substrate. Can you point us to where that is in the Kim reference itself so we can actually follow along with what you're stating? Okay. So the Kim reference begins on Appendix 477, and that's the Japanese version. There's a translation that's behind it that begins on Appendix 482. And then the Figure 3 that I was discussing that's reproduced in the final written decision is on Appendix 486. And you can see in the description of Figure 3 on Appendix 485, where it says brief description of the drawings, it says this is a longitudinal, with respect to Figure 3, it says this is a longitudinal cross-section view showing the situation in which one example of a bottom-lead semiconductor package of the present invention is mounted on a printed circuit board. Where does it say, I mean, which claim, which element in Figure 3 is identified as being the circuit board? It's 40. Yes, 40 on it. And so why is it that 40 isn't the red line that the petition identified? Under which argument, Your Honor? Well, I understand you've got alternative arguments for what the prior art teaches, but it's hard to see why is it that your first argument was incorrect? Why should you be able to arbitrarily write what the mounting surface is depending on the figure? Your reference doesn't seem to teach the alternative that you're seeking. I see what you're asking, Your Honor. The claim is about a surface-mountable electronic device, and it's that device that has to include the mounting surface. And so that's why the bottom of the semiconductor package in the Kim reference is identified as the mounting surface and not the printed circuit board itself. Does that answer your question, Your Honor? I think so. Can we talk more about your possibility argument? Can you turn to Appendix 707 to the attack of 708? It seems to me there is talk in some of these terms that you've been bringing forth to us with respect to conform and offset. I just want you to kind of explain more what you think your possibility argument is in the grounds for it. This is the patent owner response, Your Honor. So the way that these claim terms are written require that the electrical contacts conform to the recesses that are under the Board's instruction in the mounting surface itself. And then at the end of the claim limitation, it requires there to be offsets between the mounting surface and those electrical contacts that conform to the mounting surface's recesses. So if the mounting surface zigzags up where the electrical contacts are, then there can't be an offset or a space between the mounting surface and those electrical contacts. And that is the possibility that we're referencing. So it seems to me at least on 707 to 708 they're explaining how these terms could be consistent and that there would not be such an impossibility. So I guess I'm asking you, what is your response to that? This is with reference to the district court's explanation of how there might be a construction that doesn't render the claims indefinite. Is that... Yeah, if you just even look at what's at the bottom of 707 to 708, if you have a response to it. If you don't, it's fine too, but I'm just trying to get that out. Your Honor, my response would be that as I read that proposal from the district court, that would require there to be a space above the electrical contacts and underneath the body or the mounting surface of the semiconductor package. And that is not an embodiment that's anywhere shown in the 040 patent. And I think that that explanation is just not supported by the intrinsic record. And that would be my response. We have an opinion, Philips, it's an inmate decision that says how you're going to perform claim construction. It gives lots of guidance, and one of the things it says is that we're not going to construe claims to be valid. It shouldn't construe claims to be valid. So why should the claim have to be construed if the plain language doesn't cover what's described in the specification? Why does it have to be construed to be consistent with the specification? I do think that there's intrinsic evidence that supports such a construction, namely the patent figures and the prosecution history where the applicant stated that the claims as amended read on those patent figures, and so that informs the construction of the mounting surface and offsets limitation. I know you're almost out of your rebuttal time. I'm going to restore your time, but let me ask one last question. Is your argument related to Kim? Is it focused on whether Kim does or does not disclose a mounting surface, i.e. what the prior art discloses, or do I have to first agree with your claim construction in order to get to your Kim argument? I'm trying to appreciate whether it's truly an alternative or whether it is conditional upon me first agreeing with your claim construction. I don't think it's conditional that Kim discloses a mounting surface in light of the description in that prior art reference that it's mounted on a printed circuit board and there's solder that's placed inside of those recesses. There's nothing in the Kim reference that says there's solder placed inside those recesses. In that figure, you can see that there's some adhesive that's affixing it. No, it doesn't say that there's an adhesive that's affixing it. You're right, there is some grayish matter there, but you're an attorney, and your argument with all due respect is not evidence. There's nothing in the reference itself that discloses what that is. So I guess that was what I was getting to. In the beginning, Judge Dole asked you what the standard of review is. So what's the standard of review on this question, the question about what Kim does or does not disclose? I believe it's de novo review. No, what a prior art reference teaches is review for substantial evidence. Okay, let's hear from opposing counsel,  Thank you, Your Honor. Before I begin, I'd just like to put on the record, and especially relevant to today, that Professor Moore was my teacher for patent law at George Mason, and I think I graduated before you started teaching. May it please the Court, my name is Matthew Smith,  and I represent the Appellate DSS Incorporated, the Pele DSS Incorporated. I'd first like to review the invention. While the claims of the 040 patent are directed to a surface-mountable electronic device, there are minimal electronic components recited in the claims. Instead, the invention focuses on the packaged body. In short, the invention is a box. It's a very specifically shaped box, but a box nonetheless. And as with all boxes, the environments described in the 040 patent are three-dimensional. The patent's figures may only show top and side views of the devices, but they are three-dimensional. We have included a demonstrative on page five of our appellate's brief, showing a 3D rendering of the figures of 4A and 4B in three dimensions. This is not a new concept. For example, Nietzsche's expert declaration has a similar rendering, which is on page 354 of the appendix. And likewise, in its deposition of DSS's expert Dr. Baker, Nietzsche presents another version of the 3D renderings, which is on page 1128 of the appendix. While Nietzsche clearly understands that the devices of the 040 patent are three-dimensional, they try to force the claim language to fit two-dimensional drawings, specifically figure 4A, by trying to fit a square peg into a round hole. So would you, Mr. Smith, say that the board's construction allows that claim to capture figure 4A, or do you think the board's construction excludes figure 4A as an embodiment from the scope of the claim? That's a good question. I think that the board's construction includes figure 4A. I think that the board, throughout its arguments, I mean, its decision, had, it always, it always, throughout its decision, included caveats that either directly stated or implied that Nietzsche's interpretation of figure A, that it was what the claims did not read on. For example, in the final written decision, on page 11 of the appendix, the board asserted that it was Nietzsche's reliance on figure 4A alone, which caused the uncertainty in the claim language. Likewise, on the next page, the board implies that there is no support for Nietzsche's interpretation of figure 4A that falls within the scope of claim 1. Can you tell us what the standard is for the board in these IPRs? The statute says they're not allowed to address indefiniteness. So what is it that they should do in a situation like that, according to our case law? And what is it that you think they did in this case? The case law says that they have to not render a decision if they found it impossible to render a decision. But the case law also allows for them to render a decision in cases where, for example, in the Intel case where at least one element of the claim was missing from the prior arcs and that was not reaching the impossibility of other elements, they were able to make that determination. And here they say we only need to construe the claim so much as to resolve the validity, anticipation, obviousness issue before us. So we want to construe it any better than that? Correct. They construed the term mounting surface to have recesses in the sides and the mountings to be actually a part of the device. I'm sorry, I didn't mean to interrupt. Were you finished? Oh, I was just going to say that they didn't need to construe everything else because they found those elements missing from the prior arc. Is there a companion district court litigation to this IPR? Yes. And so I assume indefiniteness is an issue being raised there? Yeah, the case is currently pending this decision here, but the indefiniteness was brought up in the district court case in a motion to dismiss, I believe. I'm not involved in that case. Were they reserving it to be addressed during the claim construction phase? Is that what's happening there? I think they haven't gotten to claim construction as far as I understand. Sure, but my question to you is would indefiniteness be addressed in claim construction in the district court case? Yes. Okay. The claim construction does not lead to any sort of impossibility. It is Nietzsche's opinion that the construction is impossible because the device cannot have both a mounting surface with recesses to which the electrical contacts conform and a mounting surface and contacts that are spaced apart by an offset. Can I also ask you about the same pages I asked your opposing counsel about? Sure. Can we look at Appendix 717 and 718? And if you think there are better pages we should look at instead, I'm open, but I want to talk about the impossibility issue a little bit further to the text that I think you were pivoting to. 707, you said? Yes, Appendix 707. In page 707, it's addressing the Kim reference. I'm not specifically addressing the impossibility of the claims of the 404 patent. Maybe I'm not in the right spot. The part I was focused in on 707 was at the bottom, the beginning of the additional language going on to the top of 708. I talked a little bit with your opposing counsel about it, and I thought it would be fair game for you to also address it. This is the 404 patent. Yes, this is what's argued in the district court. Right, so that's just one example of a way to construe the claims that would not lead to impossibility of the 404 patent. And that's what the district court knows. Okay. Nietzsche argues that the board stated that neither party had sufficiently explained how to solve Nietzsche's impossibility position. However, the board did not actually state that an impossibility exists, only that neither party sufficiently explained how the elements were arranged. In fact, the board never confirmed there was an impossibility. Instead, the board correctly found that it could address— And whether Kim, this alternative argument that we have, that Kim actually teaches a non-instructor that's not a claimer and thus has resources, what is your response to that? One question would be, what do you think the standard of review is there? Is it a factual question or a legal question? What a reference teaches, I believe, is reviewed under substantial error. Substantial evidence, it's a factual question. And what is your view and what is your response to the assertion that Kim teaches a mounting surface that has recesses? Well, the Kim reference, first of all, the non-claimer interpretation of the claim language, we do not agree with. We do not think that there is a non-claimer mounting surface. That was something that first— In Kim? In Kim or in the 404 reference, the 404 patent. We think that the mounting surface is a flat surface that has recesses in the sidebar. There is nothing in that language that supports that it's non-plainer. In the Kim reference, they've drawn several ways where they think that the Kim reference reads on the claims of the 404 patent, but we disagree that that's true. I don't—Kim's missing, besides for the mounting surface, is missing other elements from the claim language. Well, focusing on the mounting surface, that's really what the board is able to resolve when you speak on the board. Right. What do you think I should look at in Kim for your substantial evidence to support the board's view that Kim doesn't teach a mounting surface, that their interpretation of Kim would be alternative, that that's not actually a mounting surface? At no point does Kim show that there are recesses in the sides of the mounting surface as the patent office found that the claim language requires. Can you point us to a JA page to answer Judge Stoll's question in particular? Well, the next page, 709, shows that as a flat surface, how much the device is mounted, and that's not— I think—didn't your opposing counsel take us to Kim? I think it was around Appendix 485 he had us at one point, if I'm remembering correctly. Yeah. It was beginning around 482, at least, the translation. Is that right? Am I in the right spot? The translation of Kim is— Yeah, I believe it—482. Oh, look. 480. 498, I believe, is the beginning of the English translation of Kim. Oh, sorry, that's the next one.  Yeah, 482. I didn't want to step on Judge Stoll's tools. I was just hoping to follow along in the reference itself as you answered the question. Great. So on page 486, they show the embodiments of their— and we—our position is that there is no side recesses that is shown in Kim at any point on this device, as the board found. I mean, so what's missing? I mean, Figure 3 in Kim looks so much like Figure 4a of the patent to me. So what is—what's the problem? What's missing? Well, if you look at Figure 4 of Kim, these apparent— I'm looking at Figure 3. Right, right, right. But Figure 3 is the side view and Figure 4 is the top view. Got it. So if you look at Figure 4 and Figure— the portion of that where 45 is that you pointed out earlier is the open spaces in Figure 4, so that there's no sort of recess in the mounting surface. These are missing portions of the device itself. I don't understand. Number 45 isn't shown on Figure 4. Right, right, right. But the position where it is would be those— I don't know what to call them, but like the holes in the side of the device where it makes a bunch of U-shapes, where 32 is referenced. 32 is labeled the internal lead. But these are holes in the device, and it's mounted on 62. So it doesn't have recesses in the side body as claimed in the 404 patent. Okay, anything further, Mr. Smith? No, that's it. Thank you. Do you have no further questions? No, I don't think so. Thank you very much. Thank you. Thank you. Thank you very much. So if we go back to the Kim reference on pages 484 of the appendix, and then we'll go to 485 next, but I want to point out two paragraphs in Kim that talk about solder and mounting the Kim reference. In paragraph 7, this is describing Kim at a high level. In view of this current situation, the present invention is directed to providing a bottom-lead semiconductor package and a method of manufacturing the same, in which in mounting the bottom-lead semiconductor package on a board, such as a printed circuit board, a strong solder joint is made. The mounting height of the package can be minimized, and the bottom leads can be arranged at a high density. And I believe that that is similar to what the 040 patent describes as the purpose of its invention. And I'd also like to direct the panel to paragraph 19 of 485, and that's a description of figure 3 of Kim. And it's describing figure 3 as a longitudinal cross-sectional view showing the situation in which a bottom-lead semiconductor package, according to the present invention, is mounted on a printed circuit board. The lower faces of the bottom lead group, 31, are directly adhered to the upper face of the printed circuit board, 40. An electrical connection to this board is made by way of solder, 45, which is injected into the grooves, 38, respectively formed... Perfect. So it's not attorney argument. Well done. Thank you. Apologies for not having that at my fingertips before. One other point that I would like to make with respect to the board's construction, with respect to figure 4A in particular, is that the board explicitly found that figure 4A is not within the scope of claim 1 of the 040 patent. And we made an argument in pages 71 and 72 of the Blue Brief that based on that finding, none of the other patent figures that we reproduced in that section would be covered by the board's interpretation as well. And I believe that that's indicative of the errors that occurred here, is that none of the embodiments of the invention would be covered by the board's interpretation of mounting circuits. That's just as a way of answering, because the board is correct on that. And where does that leave it? You know, there's a...  But claims shouldn't be interpreted to solve invalidity problems, right? That's right, Your Honor. I believe that goes to the indefiniteness or the impossibility issue that we were presenting in this appeal. And therefore, the final written decision should be vacated and even the institution decision, perhaps. Such that no estoppel would apply. What is the difference between impossibility and indefiniteness versus written description? Written description has to do with whether there are words in the specification that describe the embodiments. And the impossibility and indefiniteness issue has to do with whether it is logically and physically possible for there to be conforming electrical contacts and a space between the mounting surface and those electrical contacts that are supposed to conform to the recesses in the mounting surface. Whether the claim language itself is so confusing or what it describes is impossible to satisfy? That's right. But you haven't lost the indefiniteness argument. I mean, you still can make that in the district court, correct? We can still make that in the district court, Your Honor. And you have now conditioned, I guess, collateral estoppel. Should they try to argue something different about the construction in the district court? That's true, Your Honor. What we do have, though, is estoppel based off of 102, 103 paper prior art. And a final written decision comes with that estoppel provision under 315E. But that doesn't affect your 112 arguments. It doesn't. But it does preclude us from arguing any paper prior art in the district court litigation. Not any paper prior art. Only paper prior art that you knew or should have known of at the time you brought the IPR, right? I can't remember if we stipulated whether it was broader than that or not. But it's very possible that we might have. And so if we did, that would be an even broader estoppel provision. That's on you, though, if that's the case. That is true, Your Honor. Do you have any non-paper prior art? You were very specific. Do you have any non-paper prior art that you were going to argue? I'm not sure at this time. Is that a privilege where you can't tell me? I assume that you're hesitating. I'm not aware of any non-paper prior art at this moment that we have that we're intending to argue in the district court. But I'm not sure if we were able to find any. Okay. Thank you, Mr. Lucas. We take this case under submission. Thank you, counsel. Thank you, Your Honor.